**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| TOTAL FACILITY MAINTENANCE, INC., and THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) ) ) |
| | ) |
| *Defendants*. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes the Plaintiff, Westfield Insurance Company ("Westfield"), by and through its attorneys, and for its Complaint for Declaratory Judgment against the Defendants, Total Facility Maintenance, Inc. ("TFM") and the Board of Education of the City of Chicago (the "Board"), alleges as follows:

### INTRODUCTION

1. In this declaratory judgment action, Westfield seeks a judicial declaration that it owes no duty to defend or indemnify TFM under a Commercial General Liability ("CGL") policy of insurance, with respect to a claim for breach of contract and contractual indemnity by the Board in the Circuit Court of Cook County, Illinois, under case no. 19 CH 13751, arising out of a workers' compensation claim filed against the Board.

### THE PARTIES

2. Westfield is an Ohio corporation, which maintains its principal place of business in Westfield Center, Ohio. Westfield is a citizen of Ohio.

3. TFM is an Illinois corporation, which maintains its principal place of business in

DuPage County, Illinois, and specializes in the provision of custodial or janitorial services. TFM is a citizen of Illinois.

4. The Board is an Illinois municipal corporation, which administers the public school system in Chicago, Illinois. The Board is a citizen of Illinois.

## JURISDICTION AND VENUE

5. No defendant is a citizen of the plaintiff's state of citizenship, Ohio, so diversity of citizenship exists.

6. The amount in controversy exceeds $75,000 exclusive of interest and costs. Although this complaint seeks no monetary damages—rather, it seeks only declaratory relief—the effect of granting that relief would be to preclude coverage for defense fees and expenses exceeding $75,000 in value, exclusive of interest and costs.

7. This Court therefore has original jurisdiction of this matter pursuant to 28 U.S.C. §1332(a).

8. Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this claim occurred within the Northern District of Illinois, Eastern Division, including the underlying lawsuit, and the defendants have their principal places of business in the Northern District of Illinois.

9. An actual controversy exists between the parties, and pursuant to 28 U.S.C. §2201, this Court has the authority to grant the relief requested.

## THE WORKERS' COMPENSATION CLAIM

10. On or about January 22, 2008, Michael Delmonico ("Delmonico"), a high school teacher employed by the Board, slipped and fell in the hallway of the school where he was teaching.

11. On or about May 6, 2009, Delmonico filed an application for adjustment of claim against the Board in the Illinois Workers' Compensation Commission, and Delmonico's claim was assigned Case No. 09 WC 019751 (the "workers' compensation case").

12. TFM is not a party to the workers' compensation case, nor is it alleged to be the employer of Delmonico.

### THE *DELMONICO* TORT CASE AGAINST TFM

13. On January 21, 2010 Delmonico filed a complaint at law against TFM, in the Circuit Court of Cook County, Illinois, which was voluntarily dismissed January 20, 2016, and re-filed on July 19, 2017, as Case No. 17 L 007278 (the "*Delmonico* tort case"). A copy of the re-filed complaint in the *Delmonico* tort case is attached hereto as **Exhibit A**.

14. The complaint in the *Delmonico* tort case alleged that TFM caused Delmonico to fall on January 22, 2008, because it waxed, buffed, or otherwise cleaned the hallway floor in the school in a matter which created an unreasonably dangerous condition. Ex. A, ¶s 6-7.

15. After being served with the summons and complaint, TFM forwarded the *Delmonico* suit to Westfield, requesting defense and indemnity under the terms of its CGL policy.

16. Westfield accepted TFM's tender of defense and indemnity in the *Delmonico* tort case and appointed counsel to defend it.

17. Westfield settled the *Delmonico* tort case on behalf of TFM, the only defendant, and the case was dismissed on April 1, 2022.

18. The Board was never named as either a direct defendant or as a third-party defendant in the *Delmonico* tort case.

### THE CUSTODIAL SERVICES CONTRACT BETWEEN THE BOARD AND TFM

19. Upon information and belief, TFM and the Board entered into a "Sheltered Market

3

Bid Solicitation for Professional Custodian Management Services for the Board of Education of the City of Chicago," Specification No. 05-250048D (the "Contract"). Upon information and belief, a copy of the Contract is attached hereto as **Exhibit B**.

20. The Contract provides, in pertinent part, as follows:

42. **Indemnification**: Bidder [TFM] agrees to defend, indemnify and hold harmless the Board, and its respective Board members, employees, agents, officers and officials from and against all liabilities, losses, penalties, damages and, expenses, including costs and attorney fees, arising out of all claims, liens, damages, obligations, actions, suits, judgments or settlements, or causes of action, of every kind, nature and character arising or alleged to arise out of the negligent or willful acts or omissions of Bidder [TFM], its officials, agents and employees in the performance of this Contract.

\* \* \* \* \*

44. **Insurance**. Bidder [TFM], at it [*sic*] own expense, shall procure and maintain for all operations under this Contract, whether performed by Bidder [TFM] or by subcontractors… Minimum insurance requirements are:

   a. **Workers' Compensation and Employers' Liability Insurance.**\*\*\*

   b. **Commercial General Liability Insurance.**\*\*\*

   c. **Automobile Liability Insurance.**\*\*\*

   d. **Umbrella/Excess Liability Insurance.**\*\*\*

**Additional Insured.** Bidder [TFM] shall have its General, Automobile, Umbrella/Excess Liability, and Pollution Liability Insurance policies endorsed to provide that <u>the Board of Education of the City of Chicago, a body politic and corporate, and its members, employees, and agents, and any other entity as may be designated by the Board are named as additional insured on a primary basis without recourse or right of contribution from the Board</u>.

(Ex. B at 14-15; emphasis in original).

### THE BOARD'S TENDER OF THE WORKERS' COMPENSATION CASE TO TFM

21. On or about July 1, 2019, counsel for the Board sent a letter to TFM's defense counsel in the *Delmonico* tort case, tendering the defense and indemnity of the Board in the

4

workers' compensation case to TFM (the "Board's tender letter"). A copy of the Board's tender letter is attached hereto as **Exhibit C**.

22. The Board's tender letter stated that the Board had paid over $282,579.15 in the worker's compensation case as of that date, in addition to fees and costs incurred in the defense of the workers' compensation case. Ex. C at 1.

23. The Board's tender letter cited the "Indemnification" provision in Paragraph 42 of the Contract between the Board and TFM quoted above and concluded that "[TFM] is obliged to indemnify, defend, and hold the Board harmless because the worker's compensation arose out of injuries caused [*sic*] [TFM] while they were performing services under the Contract." Ex. C at 1-2.

24. The Board's tender letter also stated that "[i]n accordance with Section II, subsection 44(a) of the Contract, the Board hereby demands that [TFM] provide the policy and proof of coverage for Workers' Compensation Insurance that was required under the Contract." (Ex. C at 2).

25. The Board's July 1, 2019 tender letter was forwarded to Westfield, which did not issue a Workers' Compensation Insurance Policy to either TFM or the Board, but instead issued a Commercial General Liability Insurance Policy to TFM (See: Ex. B at 14-15, par. 44(a); par. 44(b); Ex. F at 89).

26. Westfield came to understand that the Board's tender of defense and indemnity to TFM under the Indemnification section of their Contract at par. 42 and its reference to "the policy," and to "Workers Compensation Insurance," and its citation to par. 44(a) of the Contract was an inartful attempt to express the intent on the part of the Board to seek additional insured coverage directly from Westfield under the CGL policy issued to TFM.

5

### THE WESTFIELD DECLARATORY
### JUDGMENT ACTION AGAINST THE BOARD

27. On November 27, 2019, Westfield filed a declaratory judgment action against the Board, under case no. 2019 CH 13751, seeking a declaration that it does not owe a duty to defend or indemnify the Board as an additional insured under the CGL policy that Westfield issued to TFM as named insured with respect to the workers' compensation case (the "Westfield State Court Action").

28. On August 26, 2020, the Board filed a Third-Party Complaint against TFM in the Westfield State Court Action alleging claims of contractual indemnification, breach of contract, and fraud (the "Third-Party Complaint"). A copy of the Third-Party Complaint is attached hereto as **Exhibit D.**

29. Unlike the *Delmonico* tort case, which was still pending at that time, TFM did not tender its defense with respect to the Third-Party Complaint to Westfield.

30. Instead, TFM directly retained its own counsel to defend the Third-Party Complaint, whose fees and costs were paid directly by TFM, and who reported directly to TFM and not to Westfield.

31. Illinois substantive law provides that "the insurer is not required to actually defend every claim against its insured of which it has actual notice." *Cincinnati Companies v. West American Ins. Co.*, 183 Ill.2d 317, 326 (1998). "The duty to defend may be discharged simply by contacting the insured to ascertain whether the insurer's assistance is desired." *Id*. "If the insured indicates that it does not want the insurer's assistance, or is unresponsive or uncooperative, the insurer is relieved of its duty to defend." *Id*.; *Federal Ins. Co. v. Arthur Andersen LLP*, 522 F.3d 740, 744 (7th Cir. 2008) (the "*Cincinnati* Rule").

32. As detailed below, Westfield submits that the Third-Party Complaint is, on its face,

plainly not covered under the Westfield policy.

33. TFM indicated that it understood that Westfield had no duty to defend or indemnify it with regard to the Third-Party Complaint by retaining its own attorney to defend it in that case, without requesting that Westfield defend it, in contrast to the position it contemporaneously took in the *Delmonico* tort case, where TFM explicitly tendered its defense to Westfield, and Westfield defended and fully indemnified TFM.

34. In compliance with the *Cincinnati* Rule, Westfield inquired of TFM whether it intended to seek a defense and indemnity from Westfield with respect to the Third-Party Complaint, but TFM was unresponsive, and instead continued to defend the Third-Party Complaint through its own attorneys.

35. On April 10, 2021, the state court granted TFM's motion to dismiss Count III of the Third-Party Complaint, alleging fraud.

36. On May 18, 2022, the Board filed an Amended Third-Party Complaint against TFM, again asserting its contractual indemnification and breach of contract claims but deleting the dismissed fraud claim. A true and correct copy of the Board's Amended Third-Party Complaint is attached hereto as **Exhibit E** (collectively, the "Third-Party Complaint").

### THE WESTFIELD POLICY

37. Westfield issued a Commercial Package Policy to TFM, policy no. CMM 4173842, effective December 1, 2007 through December 1, 2008, containing, in relevant part, CGL coverage and Umbrella coverage (the "Westfield policy"). A certified copy of the Westfield policy is attached hereto as **Exhibit F**.

38. The Westfield Policy is intended to be interpreted as a whole, and because TFM has not responded to Westfield's request for clarification as to its position concerning coverage for

the Third-Party Complaint, Westfield must make certain assumptions about the nature of its claim and reserves the right to amend its position in response to TFM's responsive pleading, if necessary. Subject to that caveat, Westfield sets forth the following provisions from the policy:

**COMMERCIAL GENERAL LIABILITY FORM**

\* \* \* \* \*

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"[1] or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

(Ex. F at WF 102).

\* \* \* \* \*

**2. Exclusions**

    This insurance does not apply to:

---

[1] Westfield presumes that TFM's claim for coverage for the Third-Party Complaint rests upon the policy's "bodily injury" coverage and will forgo recitation of the terms applicable to the "property damage" or "personal and advertising injury" coverage, unless advised to the contrary in TFM's responsive pleading.

8

\* \* \* \* \*

 **a.**   **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

 **b.**   **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

  **(1)**   That the insured would have in the absence of the contract or agreement; or

  **(2)**   Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

   **(a)**   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   **(b)**   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

(Ex. F at WF 103).

\* \* \* \* \*

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

\* \* \* \* \*

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

    a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    b. This insurance applies to such liability assumed by the insured;

    c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

    d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

    e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

    f. The indemnitee:

        **(1)** Agrees in writing to:

            **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

            **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

            **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

            **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

        **(2)** Provides us with written authorization to:

            **(a)** Obtain records and other information related to the "suit"; and

> **(b)** Conduct and control the defense of the indemnitee in such "suit".
>
> So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.
>
> Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:
>
> **a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or
>
> **b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

(Ex. F at WF 108-10).

\* \* \* \* \*

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2.** **Duties in the Event of Occurrence, Offense, Claim or Suit**

\* \* \* \* \*

> **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(Ex. F at WF 112).

\* \* \* \* \*

**SECTION V- DEFINITIONS**

\* \* \* \* \*

> **3.** "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any

11

> time. "Bodily injury" includes mental anguish or any other mental injury resulting from "bodily injury."

(Ex. F at WF 114).

* * * * *

**9.** "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

12

      **(a)**    Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      **(b)**    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)**    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

"Insured contract" does not include your liability to a third party by reason of a Claim or suit against you by that third party for contribution under the Illinois Joint Tortfeasor Contribution Act for damages claimed against such third party as a result of injury to your employee if you have that liability because you have waived, in a contract, your right to limit such liability to the amount of the workers compensation benefits paid for that injured employee under the Illinois Workers Compensation Act.

(Ex. F at WF 114, as amended by endorsement. WF 122; WF 124).

\* \* \* \* \*

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Ex. F at WF 115).

\* \* \* \* \*

39.    The umbrella portion of the Westfield Policy provides, in part, as follows:

**COMMERCIAL UMBRELLA COVERAGE FORM**

\* \* \* \* \*

**SECTION I - COVERAGES**

**1.**    **Insuring Agreement**

13

    **a.**    We will pay "ultimate net loss" in excess of the retained limit that the insured becomes legally obligated to pay as damages because of "personal injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "property damage" to which this insurance does not apply ***

* * * * *

    **b.**    This insurance applies only if the "personal injury" or "property damage" … is caused by an "occurrence" …

(Ex. F at WF 205).

* * * * *

    **2.**    **Exclusions**

The insurance provided by this coverage does not apply to:

    **a.**    **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(Ex. F at WF 206).

* * * * *

    **c.**    **Contractual Liability**

"Personal injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)**    That the insured would have in the absence of the contract or agreement; or

    **(2)**    For "bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the

14

> contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
>
> **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
>
> **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged; and
>
> **(c)** Such attorney fees and litigation expenses are deemed to be damages in the applicable "underlying insurance".

(Ex. F at WF 206).

\* \* \* \* \*

**3.    DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS**

\* \* \* \* \*

> **c.** Supplementary Payments. We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend:
>
> \* \* \* \* \*
>
> If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if:
>
> **(a)** The "underlying insurance" would have defended the indemnitee; and
>
> **(b)** All of the conditions listed in the Supplementary Payments section of the "underlying insurance" are met.
>
> \* \* \* \* \*

(Ex. F at WF 212-13).

\* \* \* \* \*

**SECTION IV – CONDITIONS**

**1.    Duties in the Event of Occurrence, Offense, Claim or Suit**

\* \* \* \* \*

    **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(Ex. F at WF 214).

\* \* \* \* \*

**SECTION V- DEFINITIONS**

\* \* \* \* \*

5.    "**Bodily injury**" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

(Ex. F at WF 216).

\* \* \* \* \*

12.    "**Insured contract**" means:

    **a.**    A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.**    A sidetrack agreement;

    **c.**    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.**    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.**   An elevator maintenance agreement;

**f.**   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)**   That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)**   That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)**   Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)**   Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)**   Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

"**Insured contract**" does not include your liability to a third party by reason of a Claim or suit against you by that third party for contribution under the Illinois Joint Tortfeasor Contribution Act for damages claimed against such third party as a result of injury to your employee if you have that liability because you have waived, in a contract, your right to limit such liability to the amount of the workers compensation benefits paid for that injured employee under the Illinois Workers Compensation Act.

17

(Ex. F at WF 217).

\* \* \* \* \*

24. "**Suit**" means a civil proceeding in which damages because of "personal injury" or "property damage" to which this insurance applies are alleged \*\*\*

(Ex. F at WF 220).

\* \* \* \* \*

## COUNT I

### DECLARATORY JUDGMENT RE: NO DUTY TO DEFEND OR INDEMNIFY TFM AGAINST THE BOARD'S THIRD-PARTY COMPLAINT FOR BREACH OF CONTRACT

40. Westfield restates and incorporates the allegations of paragraphs 1 through 39, above, as if set forth fully herein.

41. Westfield seeks a judicial declaration that it has no duty to defend TFM against the Board's Third-Party Complaint, under either the CGL or Umbrella sections of its policy, for one or more of the following reasons, pleading hypothetically or in the alternative:

   a. TFM has waived any right to a defense or indemnity by declining to seek any such relief from Westfield, by choosing to defend itself through its counsel, under its exclusive direction and control, and by remaining unresponsive to Westfield's requests for clarification of its position, pursuant to the common law *Cincinnati* Rule.

   b. TFM has chosen to forgo any right to a defense or indemnity by declining to seek any such relief from Westfield, by defending itself through counsel of its own choosing, under its exclusive direction and control, and by remaining unresponsive to Westfield's requests for clarification of its position, pursuant to paragraph **d.** of the Conditions sections of the CGL and Umbrella coverage of the policy.

   c. TFM has not been sued for "bodily injury" as defined in the CGL and Umbrella coverage of the policy, but instead for mere economic loss based upon its alleged breach of contract.

   d. TFM has not been sued for any damages which were "caused by an

"occurrence,'" as defined in the CGL and Umbrella coverage of the policy, but instead for the natural and ordinary consequences of its alleged breach of contract.

e. The exclusions for Expected or Intended acts in the CGL and Umbrella coverage of the policy apply to any contractual liability which TFM may have to the Board, because such liability is limited to damages which were within the reasonable contemplation of the parties at the time of formation, and no exceptions to those exclusions apply.

f. The exclusions for Contractual Liability in the CGL and Umbrella coverage of the policy apply to any liability assumed by TFM under its contract with the Board, and no exceptions to those exclusions apply.

g. The Supplementary Payments provisions in the CGL and Umbrella coverage of the policy do not apply, because: (1) the Board was not a party to the *Delmonico* tort "suit," (2) Delmonico's workers' compensation case against the Board is not a "suit," (3) the Contract between the Board and TFM is not an "insured contract," (4) the Board is not TFM's "indemnitee," (5) neither TFM nor the Board ever asked Westfield to conduct and control the defense of the Board in the workers compensation case through the same counsel retained to defend TFM in the *Delmonico* tort suit, (6) the Board never agreed in writing to cooperate with Westfield.

h. For such other and further reasons as may be supported by the evidence.

i. Westfield retains the right to raise additional bases to argue that it has no duty to defend or indemnify TFM upon being appraised of TFM's coverage position in its responsive pleading.

42. As such, Westfield seeks a declaration that it does not have a duty to defend or indemnify TFM with respect to the claims brought against it by the Board in the Third-Party Complaint or Amended Third-Party Complaint.

43. There may be other bases on which Westfield can properly deny coverage to TFM, and Westfield reserves the right to plead them in the future.

WHEREFORE, the Plaintiff, Westfield Insurance Company, prays that this Honorable Court enter a judgment finding and declaring that it does not owe a duty to defend or indemnify the Defendant, Total Facility Maintenance, Inc., with respect to the Third-Party Complaint or

Amended Third-Party Complaint filed against it by the Board of Education of the City of Chicago, in case no. 2019 CH 13751 pending in the Circuit Court of Cook County, Illinois, and for such other and further relief as this Court deems appropriate and just.

                                              Respectfully submitted,

                                              WESTFIELD INSURANCE COMPANY

                                              By:   */s/ David S. Osborne*

David S. Osborne
ARDC # 6237821
dosborne@lpplawfirm.com
312-800-6025
Philip G. Brandt
ARDC # 6295960
pbrandt@lpplawfirm.com
312-762-5154
LINDSAY, PICKETT & POSTEL, LLC
200 W. Madison Street, Suite 3850
Chicago, Illinois 60606
*Attorneys for Plaintiff*
*Westfield Insurance Company*